```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MASSACHUSETTS


PIERRE EMILE NOEL,            )
        Plaintiff             )
                              )
             v.               )    C.A. No. 11-cv-30037-MAP
                              )
MICHAEL J. ASTRUE,            )
Commissioner, Social          )
Security Administration,      )
        Defendant             )
```

### MEMORANDUM AND ORDER REGARDING
### PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS AND
### DEFENDANT'S MOTION FOR ORDER AFFIRMING DECISION
### OF THE COMMISSIONER
### (Dkt. Nos. 10 & 13)

### July 10, 2012

PONSOR, U.S.D.J.

### I. INTRODUCTION

This action seeks review of a final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). Plaintiff applied for DIB and SSI on November 28, 2008, alleging disability since December 7, 2006, due to a back injury, hip, leg, and shoulder problems, and a deteriorating

vertebrae.  After a hearing on June 16, 2010, the Administrative Law Judge ("ALJ") found that Plaintiff was not disabled and denied Plaintiff's claim.  (A.R. 4-22.) The Decision Review Board did not complete its review of the ALJ's decision within ninety days, thereby making the decision final.  Plaintiff filed this complaint on February 15, 2011, seeking a reversal of the ALJ's decision.

Plaintiff now moves for judgment on the pleadings (Dkt. No. 10), and Defendant moves for an order affirming the decision of the Commissioner (Dkt. No. 13).  The court takes no pleasure in the result, since the record is clear that Plaintiff does suffer back pain and is, to some degree, restricted in what he can do.  In the end, however, the standard to be applied drives the result and, for the reasons stated below, Plaintiff's motion will be denied and Defendant's motion will be allowed.

## II. FACTS

At the time of the alleged onset date of disability, Plaintiff was thirty-nine years old.  He had not completed high school and had previously worked as an automobile mechanic.  (A.R. 48, 54, 135, 138.)

A.  Physical Conditions.

Plaintiff was in several motor cycle accidents that led to a history of lumbar spine fractures. (A.R. 198-99, 201-03, 249.) He underwent spinal fusion surgery in 1986, during which metal rods were inserted. The rods were removed in 1992. (A.R. 199, 201, 249.) Plaintiff also has a deformity of his right leg due to the accidents. (A.R. 201-03.)

On May 16, 2006, Plaintiff visited Pioneer Spine and Sport Physicians ("PSSP") with complaints of back pain. Plaintiff reported that he had not had severe back pain since his surgery, but the pain inexplicably began to worsen a few months earlier. An MRI revealed degenerative changes at L3-4 and L4-5 with developmental stenosis and possible displacement of the L4 and L5 nerve roots, marked bilateral foraminal stenosis with probable encroachment on the L4 nerve root, and mild disc herniation and degenerative changes at L5-Si with moderate bilateral foraminal stenosis.[1] (A.R. 202.) Plaintiff received a left

---

[1] Foraminal stenosis is a condition in which the foramen -- an opening through which nerve roots exist the spinal canal -- becomes clogged. See Foraminal Stenosis,

3

sacroiliac joint injection for his pain. (A.R. 201-03.)

Plaintiff returned to PSSP on August 22, 2006. He reported that the injection had offered him some pain relief, but that the pain had returned and was a five or six on a scale of ten. (A.R. 197, 199.) An examination showed that Plaintiff had mild difficulty going from sitting to standing, moved with a smooth gait, and had full leg strength and hip and knee range of motion. His lumbar range of motion, however, was moderately restricted. (A.R. 197.)

Over a year and a half later, Plaintiff went to Caring Health Center in May 2008, complaining of back pain again, and was referred to Dr. Demosthenes Dasco for a neurosurgical consultation on May 22, 2008. Plaintiff reported to Dr. Dasco that his back pain was severe, but his leg pain was not and occurred only on occasion. Plaintiff also reported that, although the pain had been ongoing for two years, he was only taking over-the-counter pain relievers and had not sought other treatment. Upon

---

Cedars-Sinai, http://www.cedars-sinai.edu/Patients/Health-Conditions/Foraminal-Stenosis.aspx.

examination, Plaintiff walked slowly with an antalgic gait,[2] appeared to be in pain, and had limited bending ability. Dr. Dasco indicated that Plaintiff was totally disabled from work and required further treatment. He referred Plaintiff to Dr. Marc Linson. (A.R. 249-50.)

Plaintiff met with Dr. Linson on July 17, 2008. At this time, Plaintiff had not seen Dr. Linson for approximately eight years. Plaintiff told Dr. Linson that he would prefer to live with his back pain than undergo surgery. Dr. Linson advised Plaintiff to avoid work, but recommended that he engage in swimming and other light activities and take over-the-counter pain medication. (A.R. 251.) Dr. Linson wrote a letter on October 6, 2008, stating that "[d]ue to his chronic back pain, this patient is disabled." (A.R. 263.) As the ALJ later noted, it is difficult to tell whether this passage refers to total disability regarding any work, or regarding Plaintiff's prior work as a mechanic. The ambiguity is highlighted by

---

[2] An "antalgic gait" refers to an abnormal gait that an individual assumes to avoid or lessen pain. See Medical Dictionary, http://medical-dictionary.thefreedictionary.com/antalgic.

the doctor's reference to Plaintiff's ability to engage in light activities and to swim.

Plaintiff returned to the Caring Health Center several times over the next few months. In September 2008, he complained of back pain. (A.R. 294.) In November 2008, he complained of right shoulder pain. In December 2008, a radiographic study showed degenerative changes and he was referred to Dr. Mark Dutille of New England Orthopedic Surgeons. (A.R. 267-71.)

In February 2009, Dr. Dutille diagnosed Plaintiff with advanced glenohumeral[3] osteoarthritis of the right shoulder and prescribed anti-inflammatory medications. (A.R. 281, 288, 305.) Plaintiff returned to New England Orthopedic Surgeons three times for cortisone injections to his right shoulder on May 6, 2009, August 28, 2009, and January 26, 2010. Each time, Dr. John Corsetti noted that Plaintiff experienced significant relief for several months after the injections. Dr. Corsetti further noted that, aside from

---

[3] "Glenohumeral" refers to the glenoid cavity and the humerus at the shoulder joint. See Medical Dictionary, http://medical-dictionary.thefreedictionary.com/glenohumeral.

limited range of right shoulder motion, Plaintiff's examinations were normal and he was not a good candidate for joint replacement. (A.R. 304, 342, 352.) During the January 26 visit, Plaintiff admitted "buying Percocet on the street," and Dr. Corsetti wrote him a small prescription for Percocet. (A.R. 352.)

B.  Mental Conditions.

On July 21, 2009, Dr. Leon Hutt performed a consultative psychological examination. During the examination, Plaintiff admitted to drinking between twelve and twenty-four beers per day. Dr. Hutt diagnosed Plaintiff with alcohol dependence and severe social anxiety disorder. (A.R. 326.) Dr. Hutt indicated that he doubted Plaintiff could tolerate the stresses of employment and assigned Plaintiff a global assessment of functioning ("GAF") score of 60. (A.R. 326.) The record contains no reference to any mental health treatment for Plaintiff at any time.

C.  RFC Assessments.

   1.  Physical RFC.

On May 14, 2008, Dr. Vijay Patel completed a physical RFC questionnaire. Dr. Patel stated that he had first

examined Plaintiff on April 29, 2008. (A.R. 264.) He indicated that Plaintiff had a herniated disc with symptoms of low back pain radiating into his legs. He also noted that Plaintiff suffered from depression, and that Plaintiff frequently experienced symptoms severe enough to interfere with even simple work tasks. Dr. Patel determined that Plaintiff could sit or stand for one hour a day and fifteen to twenty minutes at one time, could sit, stand, or walk for two hours in an eight-hour work day, and could not lift any weight, move his head, or twist, stoop, crouch, squat, or climb. (A.R. 244-48.)

Dr. Corsetti completed a physical RFC questionnaire on May 20, 2010. Dr. Corsetti indicated that Plaintiff suffered from severe right shoulder pain, which interfered with his attention, concentration, and ability to perform simple work. Dr. Corsetti concluded that Plaintiff could tolerate moderate work stress; sit, stand, or walk for six hours in an eight-hour work day with two or three twenty minute breaks; lift less than ten pounds frequently, up to ten pounds occasionally, and up to twenty pounds regularly; and could frequently move his head, twist, stoop, crouch,

squat, and climb. (A.R. 355-57.)

On January 27, 2009, Dr. Robert McGan, a non-treating physician, completed a physical RFC assessment based on a record review. He concluded that Plaintiff could lift up to twenty pounds occasionally and up to ten pounds frequently; and could stand or walk at least two hours and sit six hours in an eight-hour workday. He further concluded that Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl; could perform overhead work with his right arm; and should avoid concentrated exposure to hazards. (A.R. 272-79.)

On June 23, 2009, Dr. S. Ram Upadhyay agreed with Dr. McGan's assessment. (A.R. 316-23.)

2. <u>Mental RFC</u>.

On July 29, 2009, Dr. Carol Montgomery completed a psychiatric review technique form based on a record review. Dr. Montgomery concluded that Plaintiff did not have a severe mental impairment. (A.R. 327-39.)

D. <u>Hearing Testimony</u>.

Plaintiff testified at the hearing that he was unable to work due to the pain in his back, right shoulder, and

9

right leg. (A.R. 55-58.) He described his pain as a seven or eight on a scale of ten without medication and a five with medication. (A.R. 57.) He stated that his medications made him nauseated, dizzy, and drowsy, and made it difficult for him to understand what other people were saying. (A.R. 58.) Plaintiff estimated that he could sit and stand for ten to thirty minutes at a time and could walk half a block. He testified that he had no limitations with his left arm, but had trouble bending, kneeling, and crouching. He further testified that prolonged sitting, standing, and walking aggravated his pain. (A.R. 60, 64-65.)

With regard to his mental limitations, Plaintiff testified that he had depression and anxiety, but was not taking any medications for these conditions. (A.R. 61, 66.) He admitted that he had a history of alcohol abuse, including several convictions for drunk driving, and that he drank to ease his pain. (A.R. 50-53.)

E. <u>ALJ's Findings</u>.

At Step One of the disability adjudicative process, the ALJ found that Plaintiff had not engaged in gainful activity since December 7, 2006, the onset date of his alleged

disability. (A.R. 9.) At Step Two, the ALJ found that Plaintiff's back pain, right lower extremity pain, and right shoulder pain were severe impairments. (A.R. 9.) At Step Three, the ALJ determined that Plaintiff's impairments did not meet or medically equal any listed impairments. (A.R. 10.) At Step Four, the ALJ found that Plaintiff had the RFC to perform light work, except:

> work should allow for unskilled tasks. Work should not entail any overhead lifting or reaching with the right upper extremity. Work should not entail the operation of right foot or leg controls. Work should not involve more than incidental exposure to extremes of cold or vibration. Work should not be performed at heights or using ladders, ropes, or scaffolds. Work should not entail more than occasional (meaning up to 1/3 of the time) use of ramps, stairs, stooping, crouching, crawling, or kneeling. Work should entail no more than frequent (meaning up to 2/3 of the time) grasping, pinching, or twisting with the dominant right hand and arm.

(A.R. 11.) In light of this RFC, the ALJ determined that Plaintiff was not capable of performing his past relevant work as an automobile mechanic. (A.R. 15.) However, based on Plaintiff's age, RFC, education, and work experience and on the testimony of a vocational expert, the ALJ concluded that Plaintiff could perform other work that exists in

significant numbers in the national economy, such as laundry sorter, office cleaner, or inserter. (A.R. 15-16.) Consequently, the ALJ ruled that Plaintiff was not disabled within the meaning of the Social Security Act. (A.R. 16.)

### III. DISCUSSION

Plaintiff argues that the ALJ's RFC assessment was not supported by substantial evidence because (1) the ALJ did not give controlling weight to the opinions of Plaintiff's treating physicians and (2) the ALJ improperly concluded that Plaintiff's anxiety was not a severe impairment.

A. Standard of Review.

Judicial review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner applied the correct legal standards. Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). The responsibility for weighing conflicting evidence and resolving issues of credibility belongs to the Commissioner and his designee, the ALJ. See id. at 10. The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is

such evidence "as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Accordingly, the court must affirm the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). This is true "even if the record arguably could justify a different conclusion." Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

B. Treating Physicians.

Plaintiff first argues that the ALJ erred by not giving controlling weight to the opinions of Plaintiff's treating physicians. The ALJ is generally required to give more weight to the opinions of treating physicians than to other medical opinions. 20 C.F.R. § 494.1527(d)(2). The ALJ should give controlling weight to treating physicians' opinions if the opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence" in the record. Id.

According to Plaintiff, when assessing Plaintiff's RFC, the ALJ did not consider the opinions of his treating physicians, Dr. Patel, Dr. Corsetti, Dr. Linson, and Dr. Dasco. All of these physicians, according to Plaintiff, noted that Plaintiff suffered from severe physical limitations and Dr. Linson and Dr. Dasco concluded that Plaintiff was disabled.

Plaintiff's argument is unconvincing. First, it is questionable whether these four physicians can be classified as treating physicians. A treating physician is defined as a medical professional with whom the plaintiff has an "ongoing treatment relationship." See 20 C.F.R. § 404.1502 ("Treating source means . . . [an] acceptable medical source who provides you . . .with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition[s]."). In

this case, Plaintiff visited each of the four physicians only once or twice before they rendered their opinions. Plaintiff had been treated by Dr. Linson earlier, but he visited the doctor only once or twice after an eight-year break before Dr. Linson gave his opinion. (A.R. 249-51, 263-64.)

Even if the four physicians are classified as treating physicians, the ALJ properly concluded that their opinions regarding Plaintiff's disability were not consistent with other substantial evidence in the record. First, while Dr. Linson and Dr. Dasco indicated they believed Plaintiff was disabled and unable to work,[4] opinions of disability are not medical opinions entitled to special deference. 20 C.F.R. § 416.927(e)(1). With regard to the physicians' medical assessments of Plaintiff's physical limitations, the ALJ pointed to specific evidence from the record to support his conclusion that, while the record does demonstrate that

---

[4] As noted above, the ALJ believed that Dr. Linson's statement that Plaintiff should avoid work referred only to Plaintiff's past work as an automobile mechanic, not to any work that is available in the national economy. (A.R. 14.) This interpretation is supported by Dr. Linson's additional recommendation that Plaintiff engage in swimming and other light activities.

Plaintiff suffers from some severe limitations, these limitations are not sufficient to render Plaintiff totally disabled. He noted that Plaintiff has done nothing for his pain except intermittently to seek out narcotics and has had long gaps in treatment, suggesting that his condition is not as severe as he asserts. Plaintiff refused surgical treatment suggested by Dr. Dasco and informed Dr. Linson that he would rather live with his pain than undergo surgery. (A.R. 14.) Plaintiff's physical examinations showed that Plaintiff was doing well and in no acute distress, noting a normal gait, generally good range of motion, and good joint strength. (A.R. 14.) Finally, the RFC assessments conducted by non-treating state agency physicians further support the ALJ's findings. In light of this evidence, the ALJ's conclusion that Plaintiff's physical limitations did not render him disabled was supported by substantial evidence.

C. <u>Mental Health</u>.

Plaintiff also argues that the ALJ erred by not categorizing Plaintiff's anxiety as a severe impairment. According to Plaintiff, the evidence in the record showed

that Plaintiff suffered from anxiety that imposed severe limitations on his ability to work.  Plaintiff notes that Dr. Patel found in his RFC assessment that Plaintiff suffered from depression and frequently experienced symptoms severe enough to interfere with work tasks.  (A.R. 245.)  Dr. Hutt diagnosed Plaintiff with severe social anxiety disorder and similarly indicated that Plaintiff could not tolerate the stresses of employment.  (A.R. 326.)  In addition to the medical evidence, Plaintiff argues that his hearing testimony further supports a finding that his anxiety was a severe impairment.

This argument is also unconvincing.  There is substantial evidence in the record to support the ALJ's finding that Plaintiff's anxiety was not a severe impairment.  Two of Plaintiff's physicians stated that emotional factors did not contribute to Plaintiff's functional limitations.  (A.R. 245, 356.)  Dr. Montgomery, a non-treating source who completed an assessment based on a review of the record, also concluded that Plaintiff did not suffer from any severe mental impairments.  (A.R. 327-29.)  While Dr. Hutt indicated that Plaintiff may have severe

17

social anxiety, he also admitted that Plaintiff's heavy abuse of alcohol could be the cause of his social discomfort. (A.R. 325.) There is no history in the record of any mental health treatment whatsoever. Based on this evidence, the ALJ reasonably concluded that a finding of severe mental health limitations was not consistent with the evidence in the record.

Even if the ALJ did err in his finding that Plaintiff's anxiety was not a severe impairment, that error was harmless. Because the ALJ found that Plaintiff had at least one severe impairment, the ALJ took into consideration all of Plaintiff's impairments, both severe and non-severe, when assessing his RFC. 20 C.F.R. § 404.1545(a)(2).

## IV. CONCLUSION

There is no question on this record that Plaintiff suffers significant physical and mental difficulties. It is possible, if this court were the decision-maker, that the decision regarding Plaintiff's eligibility for benefits might be different. The court cannot say, however, that the record lacks "substantial evidence" supporting the ALJ's decision; that is the standard that controls. Plaintiff may

18

be free to reapply for benefits if his condition has worsened, or if the medical evidence favoring disability significantly grows.

Based on the court's review of the record as a whole, Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 10) is hereby DENIED, and Defendant's Motion for Order Affirming the Decision of the Commissioner (Dkt. No. 13) is hereby ALLOWED.  The clerk will enter judgment for Defendant.  The case may now be closed.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U.S. District Judge